## No. 2301.

### T. MICOU et al. *v.* J. P. & J. BENJAMIN and L. MADISON DAY.[*]

Under the act of Congress, July 17, 1862, known as the confiscation act, and the joint resolution of the same date, explanatory of it, only the life estate of the person for whose offense the land has been seized, is subject to condemnation and sale.

When such person has, previously to his offense, mortgaged his land to a *bona fide* mortgagee, the mortgage is not divested. His estate and property in the land being but the land subject to the mortgage, any sale made in pursuance of the act passes the life estate subject to the charge.

APPEAL from the Second Judicial District Court, parish of Jefferson. *Pardee, J. Campbell, Spofford & Campbell,* for plaintiffs and appellees. *L. Madison Day,* defendant and appellee, in *propria persona.*

HOWELL, J. This is·a hypothecary action, instituted to subject certain property to a mortgage granted by J. P. & J. Benjamain to plaintiffs' ancestor in the year 1858.

The only defense to the suit is made by the third possessor, who claims that he is a *bona fide* purchaser for value, without notice, from the United States under a decree of condemnation and sale, made by the United States District Court in New Orleans, in the case of the United States *v.* Two squares of Ground, the property of J. P. Benjamin, under the provisions of the confiscation act of July 17, 1862, (12 Statutes at Large, page 589),, and which decree of condemnation and sale is relied on as a complete bar to plaintiffs' action.

Passing over the questions relating to the jurisdiction of the United States District Court, arising from alleged irregularities in the proceedings and· the effect of the decree upon the rights of the alleged joint owner, and conceding the constitutionality of the act of July 17, 1862, to be authoritatively determined by the Supreme Court of the United States, we will direct our attention to the scope and effect of the said decree and sale under the terms and provisions of the said act, and on the hypothesis that J. P. Benjamin was the sole owner of the property at the date of the sale.

It is strenuously contended by the third possessor, who is appellant from a judgment in favor of the plaintiffs, that the sale by the marshal vested in him, as purchaser, a complete title in fee simple to the whole of the land sold, free of all incumbrance, because in a proceeding *in rem* it was condemned as enemy's property and not as the property of an offender against the municipal laws of the United States, and because under a rule of the United States District Court, adopted by authority of the confiscation act, all mortgages and incumbrances were canceled and erased by the marshal, and in support of his position he invokes many authorities relating to the validity and effect of

*[*]Carried by writ of error to the Supreme Court of the United States and affirmed. See 18 Wallace's Reports, page 156.—REPORTER*

proceedings *in rem* in admiralty and revenue cases, and the recent decisions in 11 Wallace U. S. R. upon the said confiscation act.

We readily grant the correctness and force of the authorities quoted in regard to proceedings *in rem* in admiralty and revenue cases, and might admit their application, as claimed, in this class of cases, did we not think the interpretation given by the United States Supreme Court, in the cases of McVeigh *v.* United States, 11 Wallace 266, and Bigelow *v.* Forrest, 9 Wallace 339, to the said act of Congress and the joint resolution (No. 63, 12 Statutes at Large 627), passed in connection therewith, modifies and limits such application to a material extent. In the former case, similar to the one against Benjamin's property, the court held that it was so unlike a proceeding purely *in rem*, where no claimant is named and none appears until after the final decree or judgment is entered and the case has terminated, that the party whose property is proceeded against is entitled to appear and to contest the charges upon which the forfeiture is claimed, and that his guilt and ownership are fundamental in the case.   In the latter case it was held: " That the act and resolution are to be construed together, and they admit of no doubt that all which could, under the law, become the property of the United States, or could be sold by virtue of a decree of condemnation and order of sale, was a right to the property seized, terminating with the life of the person for whose act it had been seized," and that the estate acquired by the purchaser at the marshal's sale expired at the date of the death of the said person.   The point was plainly and fairly presented on behalf of Bigelow, " that the decree of confiscation in the district court of the United States is conclusive that the entire right, title, interest and estate of French Forrest was condemned and ordered to be sold, and that as his interest was a fee simple, that entire fee simple was confiscated and sold." But in reply the court says: " Under the act of Congress the district court had no power to order a sale which should confer upon the purchaser rights outlasting the life of French Forrest.   Had it done so it would have transcended its jurisdiction.   *   *   *   The argument assumes what can not be admitted, that the decree of the district court established a confiscation reaching beyond the life of French Forrest, for whose offense the land was condemned and sold."

Taking these decisions as authority binding on us in the interpretation and construction of the legislation of Congress on this particular subject, we must conclude that the purchaser in this instance acquired only a right to the property sold, which is to terminate with the life of Benjamin, for whose act it was confiscated, and we think it follows as a legal consequence that the mortgage, granted by him prior to the passage of the confiscation act, was in no manner affected or impaired

by the sale. The law itself makes no provision for the extinguishment of mortgages on real property. It makes no reference whatever to the subject of mortgages, and as it authorizes the sale of only a life interest in the real estate and not the property in fee simple, which is the subject of the mortgage, it seems clear that the mortgage still exists on the property unimpaired. "The mortgage is a real right on the property bound for the discharge of the obligation," (R. C. C. 3282), and is extinguished only in the modes prescribed by law or the consent of the parties. In some instances, specially provided by law, where mortgaged property is sold for specific purposes and under certain formalities, the mortgage attaches to the proceeds and the property passes to the purchaser free. But this result is expressly provided for as declared by special enactment, and only in regard to mortgages created after the law is enacted. Hence we are not lightly to presume that a law is intended to work such a result, when such intention is not clearly expressed. But this principle does not apply in this case, for the statute does not so direct, and the property in full ownership was not sold under its provisions, but in imperfect ownership—the life interest of the mortgageor—his use, enjoyment and dominion thereof for life, without injury to the rights of those who had real rights to exercise thereon. Nor can it be successfully asserted that the mortgage was extinguished by reason of the proceeding being one purely *in rem*, and thus conveying a title good against all the world, because, according to the doctrine in Bigelow *v.* Forrest, no such title was conferred. The title acquired by the purchaser is not good against the heirs of Benjamin, and it can not be pretended that, had he died soon after the sale, his heirs would have taken the property free of the mortgage, which he had imposed on it. It was never contemplated that the confiscation of an enemy's property should operate the extinguishment of his obligations and transmit his property to his heirs in a better condition than he himself could have done. No construction of the act of Congress which works such results can be accepted.

The estate acquired by the appellant may be assimilated to the usufruct under our system of laws, by which the property in usufruct passes to the usufructuary with all the burdens imposed by the owner. R. C. C. 557, 582, 583. If it be an estate for life, as shown to the common law, the mortgage created by the original owner still exists, and the tenant for life—the life of Benjamin—is in no better condition under the confiscation law than if Benjamin had voluntarily put him in the position in which the United States have put him. Under this system the rule is that the tenant for life shall keep down the interest due upon the mortgages and other incumbrances, though he is not bound to pay off the principal. Bisset on Estates for Life, 273; 4 Kent,

§ 74 to 75. This implies of course the existence of the mortgages. Again, it is said : " If the estate is sold to discharge incumbrances, the income of the surplus beyond what is necessary to discharge the incumbrances, is to go to the tenant for life during his life, and upon his death the capital is to be paid out to the remainder man, or reversioner.". Bisset on Estates for life, 274.

Here the right of the mortgagee to sell the property held as a life estate, in order to pay off his mortgage, is clearly recognized.

It is, however, unnecessary for us to determine precisely the nature, character and conditions of the estate conveyed to the purchaser under this act of Congress. It is sufficient to know that a complete, absolute, indefeasible title was not conveyed, and that without such and without some express provision or direction in the law, or some necessary effect in the judicial proceedings for the removal of the real right resting on and inhering in the property itself, the mortgage, which was duly recorded, is not invalidated.

The authority granted in the act to the United States District Court to make such orders and establish such forms of decrees of sale, and direct such deeds and conveyances to be executed, where real estate shall be the subject of sale, as shall fitly and efficiently effect the purposes of the act, and vest in the purchaser good and valid titles, does not, under the limitation contained in the joint resolution, extend to the removal of incumbrances on the property, for the plain reason that it was not the purpose of the act, under said limitation, to sell that part of the estate, the fee simple, which was affected by the mortgage. And hence the act of the marshal in removing the mortgage was ineffectual.

But it is argued that the case of Bigelow v. Forrest is overruled by the later cases of Miller v. United States, 11 W. 268, and Tyler v. Defrees, ib. 331. In this we are not prepared to concur.

An examination of these several cases is necessary to ascertain what was decided in each, and it will, we think, be apparent that they do not conflict.

In the first case, Douglass Forrest, the defendant in error, was the sole heir of his father, French Forrest, whose property (real estate) had been confiscated, and he was claiming, in an action of ejectment, the property from Bigelow, the vendee of the purchaser at the marshal's sale. The parties were such as; necessarily and appropriately, to raise the question as to the nature and quantity of the real estate conveyed by the confiscation sale, and to determine the purview of the act and joint resolution in this regard. In the discussion of the question, the court referred to the history of the joint resolution, and the constitutional difficulty, suggested by the President, which it was intended

to obviate, and held that its legal effect was to restrict the operation of the act to the sale of only a life interest in real estate seized under its provisions. The court deliberately declared that under the said "act of Congress the district court had no power to order a sale which should confer upon the purchaser rights outlasting the life of French Forrest. Had it done so it would have transcended its jurisdiction." And the judgment restoring the property to the heir was affirmed by a unanimous court.

The case of Miller was a proceeding under the act of August 6, 1861, and the above mentioned act of seventeenth July, 1862, to confiscate personal property, and consequently the question in the Bigelow case, in regard to real estate, could not and did not arise. The questions raised and discussed related to the jurisdiction, sufficiency of proof, necessity of trial by jury and the constitutionality of the acts of Congress, under which the proceedings then before the court for the confiscation of Miller's property were had, and they were all decided by a majority of the court in favor of the United States. The contest, apart from the mode of procedure, was in regard to the right to confiscate the property, and not to its restoration after confiscation—to the constitutional power of Congress to confiscate the property of offenders as a punishment for crime—it being contended that the purpose of the act of 1862 to punish offenses against the sovereignty of the United States, and that it is in conflict with the fifth and sixth amendments of the constitution, which require a finding by a grand jury and a speedy trial by a jury in the State and district wherein the crime shall have been committed. The court held that in this respect the act had two distinct purposes, to wit: To provide, first, as it did in the first four sections, for the punishment of treason, inciting or engaging in rebellion or insurrection, or giving aid and comfort thereto, which was an exercise of the sovereign, and not the belligerent rights of the government; and secondly, in the subsequent sections, which have in view a state of public war, for the seizure and sale of the property of public enemies, which was the exercise of the war power of Congress, to which there is no restriction in the constitution. It was declared that those engaged in the rebellion were enemies as well as offenders, and that without reference to their liability to punishment for crime, their property could be seized as enemies' property, under the conceded right of the government to confiscate the property of all public enemies. As to what this right is, the court say : "It may be remarked that it has no reference whatever to the personal guilt of the owner of confiscated property, and the act of confiscation is not a proceeding against him. The confiscation is not because of crime, but because of the relation of the property to the opposing belligerent, a relation in which it has been brought in consequence of its ownership.

It is immaterial to it whether the owner be an alien or a friend, or even a citizen or subject of the power that attempts to appropriate the prop-erty." The case of the Venus, 8 Cranch 255, is quoted as establishing this doctrine.

This and much more is said *arguendo*, to maintain the constitutional right of Congress, under the war power, to confiscate the property of all enemies, including the inhabitants of the insurgent States, but not to determine to what extent that power had been exerted in the confis-cation of real estate. That point had been settled in the Bigelow case and was not in the case then before the court, and was not alluded to in the opinion of the court or the dissenting opinions. Nor is there anything in the whole case, as we understand it, inconsistent with the reasoning and decision in the Bigelow case on the point as to the limit-ation on the power of the court to sell real estate. It is well to remark further that the opinion of the court in each of these two cases was delivered by the same justice, and it can hardly be imagined that under the circumstances the earlier case would have been deliberately over-ruled without some allusion to the fact, or that it could have been overruled by mere inadvertence.

The case of Tyler was an action of ejectment, instituted by the party himself, whose real property had been confiscated, to recover it from the vendor of the purchaser at the marshal's sale; and here again the question of fee simple or life estate was not involved nor referred to. The proceedings as to Tyler were final and conclusive, just as they are in the Benjamin case as to him, and it can make no practical difference to either, whether it was his fee simple or his life estate, which was seized and sold, and hence the point was irrelevant. The doctrine in the Miller case was affirmed and held to govern the case of Tyler—the principal question being a jurisdictional one, growing out of the mode of seizing real estate. In this case also there was a dis-senting opinion, and no allusion whatever was made in either of the opinions to the Bigelow case or the main question decided in it.

Until deliberately overruled we must accept the Bigelow case as the law on the question material to the decision of the case at bar. The question then, as now, was not what Congress might have done in the way of confiscating enemies' property, but what Congress actually did. We may concede that under the war power Congress had the right to order the seizure and sale of the fee simple of all enemies' real estate, but it by no means follows that Congress has done so in the act of July, 17, 1862. On the contrary, as construed by the United States Su-preme Court, the language of the joint resolution, by which Congress chose to limit the operation of the act, clearly refers to and controls the whole act. It does not refer merely to the punishment of offenders,

for it says, " punishment or proceedings under said act." It does not refer merely to the first four sections, for it speaks of the act as a whole.

We are constrained therefore to conclude that the sale made by the marshal, under the order of the United States District Court, did not vest in the purchaser a fee simple title to the land in question and did not extinguish the mortgage existing on it at the time, and that the plaintiffs have established the legal right to enforce their mortgage upon said property in his hands.

Judgment affirmed.

Rehearing refused.

---

TALIAFERRO, J., *dissenting.* I dissent from the opinion of the majority of the court for the following reasons :

The act of Congress of July 17, 1862, was enacted for several purposes, and embraces different and distinct objects. Among these objects, two are prominent :

*First*—To punish treason and rebellion.

*Second*—To seize and confiscate the property of rebels.

The first three sections declare the punishment to be inflicted upon persons convicted of treason against the United States, or of inciting, assisting or engaging in rebellion against the United States. Persons convicted of either of these offenses incur pains and penalties that are to affect them personally. In the case of treason they are to suffer death or imprisonment not less than five years, at the discretion of the court; to be fined not less than ten thousand dollars, and to be deprived of the ownership of slaves, if they own any, the fine to be levied and collected on any or all of the property, real and personal, excluding slaves. In the case of inciting to rebellion, or aiding or assisting therein, etc., imprisonment not to exceed ten years, a fine not exceeding ten thousand dollars, liberation of slaves, if owning slaves, etc., at the discretion of the court. In either case, the person convicted to be forever incapable of holding any office under the United States.

Let it be observed that the provisions of these three sections of the act apply to any and all persons without distinction.

The fourth section has no immediate bearing on the subject of the penalties prescribed for offenses under the act.

· The fifth section makes it the duty of the President of the United States to cause the seizure of all the estate, property, etc., of every kind of certain persons designated therein in six different classes, and to apply and use the same and the proceeds thereof for the support of the army of the United States.

The succeeding sections provide the mode by which the provisions

of the fifth section shall be carried out. The proceedings are to be *in rem*. The courts to be vested with power to make such orders, establish such forms of decree and sale, and direct such deeds and conveyances, where real estate is sold, as shall vest in the purchasers of such property good and valid titles.

Here, then, we have by this fifth section an entirely different purpose of the legislator. He does not appear here as the avenger of wrongs, nor does he evince the disposition to punish the wrong doer corporeally or by fine or disabilities. That, he has already done in his sovereign capacity by the provisions of the first three sections. He now, by the right which belongs to him by the established rules of war, avails himself of the property of those who have assumed toward the nation the attitude of public enemies, to obtain means to help support his own armies by depriving his enemies to that extent of means to support theirs. That Congress possesses this right under the war power there is, I conclude, no doubt whatever. It is a right inherent in the nation from the order and fitness of things, and which I can not clearly perceive how it can divest itself of. Unless there be something clearly and directly indicating that Congress has ignored this right or absolutely refused to exercise it, I must think the provisions of the fifth section show that it did exercise it. There is certainly no good reason why Congress should deprive itself of that important power, and more especially when the same power was resorted to by the formidable coalition then raised against the very life of the nation.

The resolution bearing the same date with the act, provides that no "punishment or proceedings under said act shall be so construed as to work a forfeiture of the real estate of the offender beyond his natural life."

It is referred to as matter of history that this resolution was passed in conformity with the views of Mr. Lincoln to relieve his doubts of the constitutionality of the act. That being the avowed purpose for which the resolution was passed, the proviso it contains should bear only against that part of the act, if any, which is obnoxious to the objection raised by the President. A fair interpretation, then, of the resolution, it would seem, would restrict it to those sections which provide for the punishment of offenders. The fifth section of the act provides for the exercise of rights arising from the war power, and are clearly free from constitutional objections. If, then, under proceedings authorized by the sixth, seventh and eighth sections of the act, property owned at the time of its passage by persons designated under the fifth section has been sold, what is to prevent the purchaser from getting a fee simple title? He acquires, as the law declares, a good and valid title, and this must mean a title in fee, unless the qualifying

terms of the resolution limit it to a lifetime estate; and it clearly appears to me it does not in this case, as the property was not sold under *fieri facias* to satisfy a personal judgment against Benjamin, imposing a fine or forfeiture, but the proceeding was *in rem*, and assimilated in all respects to admiralty proceedings. The case of Bigelow *v.* Forrest, 9. Wallace 339, seems at variance with the views here taken, which, however, I think, are sustained by the subsequent decisions of the Supreme Court of the United States, and especially the cases of Miller's Executor *v.* the United States and Tyler *v.* Defrees, reported in 11 Wallace. If these cases conflict with the views expressed in Bigelow *v.* Forrest, the authority of the latter case would seem to be overruled. But the plaintiffs hold that whatever be the effect of the decree as to Benjamin, their rights are not impaired; that their mortgage follows the property; that it was not the purpose of the act of Congress of July, 1862, to involve the innocent with the guilty, and that no condemnation of the latter can affect the former. This plea I think entitled to but little consideration. The action was *in rem*, purely an admiralty proceeding in form. The usual monition was published. All persons were notified to come forward and make known their objections, if any existed, why the sale should not be made. This stood in the place of personal citation, and was equivalent to it. It was then incumbent upon the plaintiffs to have made objection, or to have claimed priority in the distribution of the proceeds. The purchaser obtained the property free of all claims or liens whatever, and I think judgment should be given in his favor.

Rehearing refused.